UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

COURTNEY GIBSON,

      Plaintiff,

v.                                                                 Case No: 6:24-cv-683-JSS-NWH

CRYSTAL IDLEBURGH,

      Defendant.

_____/

## <u>ORDER</u>

Defendant moves to dismiss Plaintiff's amended complaint for failure to state a claim. (Dkt. 20.)  Plaintiff opposes the motion. (Dkt. 27.)  Without leave, Plaintiff filed a second amended complaint, (Dkt. 33), which Defendant moves to strike, (Dkt. 34).  As directed by the court, (*see* Dkt. 36), the parties submitted supplemental briefs on the issue of qualified immunity, (*see* Dkts. 39, 40).  Upon consideration, for the reasons outlined below, the court grants Defendant's motion to strike, and Defendant's motion to dismiss is granted in part and denied in part.

## BACKGROUND[1]

Plaintiff, a prisoner[2] proceeding pro se, sues Defendant, an officer at the Brevard

---

[1] These are taken from Plaintiff's amended complaint, (Dkt. 8), the allegations of which this court must take as true in ruling on a motion to dismiss.  *See Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006).

[2] Although Plaintiff alleges that she was a convicted prisoner at the time of filing her claims, the amended complaint does not indicate whether Plaintiff was a pretrial detainee or a prisoner at the time of the incident.  (*See* Dkt. 8.)  In any event, a court may take judicial notice of facts that are not subject

County Jail, in Defendant's individual and official capacities for violations of Plaintiff's Eighth and Fourteenth Amendment rights.[3] (Dkt. 8 at 2–4.) Plaintiff alleges that in July or August 2020, Defendant performed a routine inspection of Plaintiff's cell, and when Plaintiff "plac[ed] [her] hands in the slot to be placed in handcuffs, [Defendant] went all the way up [Plaintiff's] forearm[,] forcefully dragging the handcuffs down [Plaintiff's] arms with fecal matter on them." (*Id.* at 5.) Plaintiff also alleges that she was accused of "attack[ing] [Defendant] with fecal matter" but that "there were never any formal charges" made regarding this accusation. (*Id.*) Plaintiff claims that she "received [a sexually transmitted disease] from the incident" and has a related "diagnosis of lesions on [her] genitals." (*Id.*) Plaintiff states that Defendant "acted with culpable state of mind[,] maliciously, and sadistically for the purpose of causing harm," or "was deliberately indifferent to [Plaintiff's] emotional well[-]being,

---

to reasonable dispute from sources whose accuracy cannot be questioned, Fed. R. Evid. 201(b)(2), including state court records, *Cunningham v. Dist. Att'y's Off. for Escambia Cnty.*, 592 F.3d 1237, 1255 (11th Cir. 2010). The court takes judicial notice that between March 31 and December 29, 2020, Plaintiff was charged by information in six cases in the Eighteenth Judicial Circuit Court for Brevard County, Florida, with several offenses, including second degree murder, battery on a law enforcement officer, and battery by a person detained in prison or jail. *See* Brevard Cnty. Clerk of Cts., BECA-Brevard Electronic Court Application (Nov. 7, 2024), https://vmatrix1.brevardclerk.us/beca/CaseNumber_Search.cfm (input the following case numbers: 05-2020-CF-017733-AXXX-XX, 05-2020-CF-026784-AXXX-XX, 05-2020-CF-033332-AXXX-XX, 05-2020-CF-036679-AXXX-XX, 05-2020-CF-036875-AXXX-XX, and 05-2020-CF-054623-AXXX-XX). Plaintiff was convicted and sentenced in those cases in 2023. *See id.* The court remanded Plaintiff prior to her conviction. *See id.* (view Dkt. 34 in case number 05-2020-CF-017733-AXXX-XX and Dkt. 3 in case number 05-2020-CF-026784-AXXX-XX). Thus, in 2020, at the time of the incident at issue, Plaintiff was a pretrial detainee.

[3] Since Plaintiff was a pretrial detainee at the time of the incident, her right to be free from deliberate indifference "exist[s] under the due process clause of the Fourteenth Amendment rather than the Eighth Amendment." *De Veloz v. Miami-Dade County*, 756 F. App'x 869, 876 (11th Cir. 2018) (quoting *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306 (11th Cir. 2009)). That said, "the standards under the Fourteenth Amendment are identical to those under the Eighth" in the context of deliberate indifference. *Id.* (quoting *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007)); *see Johnson v. Bessemer*, 741 F. App'x 694, 699 n.5 (11th Cir. 2018).

safety, and health." (*Id.* at 4.)  Plaintiff seeks Defendant's "remov[al] from all police work," along with compensatory and punitive damages. (*Id.* at 5.)

Plaintiff filed her initial complaint on April 8, 2024,[4] asserting various individual and official capacity claims against Defendant, as well as ten John and Jane Does and the Chief Executive Officer of the Brevard County Jail Complex, for violations of her Eighth and Fourteenth Amendment rights. (*See* Dkt. 1; Dkt. 1-2 at 4.)  The court sua sponte dismissed all but the individual capacity claims against Defendant and granted Plaintiff time to amend to "proceed with . . . dismissed official capacity claims." (Dkt. 6 at 6.)  Plaintiff filed the operative amended complaint on May 23, 2024, asserting individual and official capacity claims against Defendant for violations of her Eighth and Fourteenth Amendment rights. (Dkt. 8.)  On September 10, 2024, Defendant filed the instant motion to dismiss. (Dkt. 20.)  Plaintiff then moved to amend her complaint, (Dkt. 22), which the court denied, (Dkt. 25). Nevertheless, on January 30, 2025, Plaintiff filed a second amended complaint. (Dkt. 33.)

## APPLICABLE STANDARDS

Federal Rule of Civil Procedure 12(f) authorizes a court to strike a pleading. Fed. R. Civ. P. 12(f).  Striking a pleading under the rule is a matter committed to the court's sound discretion.  *See McCorstin v. U.S. Dep't of Lab.*, 630 F.2d 242, 244 (5th Cir.

---

[4] These dates are determined under the mailbox rule, by which a pro se prisoner's legal mail is deemed filed on the date the prisoner delivers it "to prison authorities for forwarding to the [d]istrict [c]ourt." *Houston v. Lack*, 487 U.S. 266, 270 (1988).

1980) (reviewing a Rule 12(f) decision for abuse of discretion). Courts "generally view motions to strike with disfavor." *Gill-Samuel v. Nova Biomedical Corp.*, 298 F.R.D. 693, 699 (S.D. Fla. 2014) (quotation omitted). However, "striking an improper amended pleading filed without leave of court is appropriate and necessary to enforce Rule 15(a)(2)." *Rogers v. Hartford Life & Accident Ins. Co.*, No. CIV.A. 12-0019-WS-B, 2012 WL 2395194, at *1 n.1 (S.D. Ala. June 22, 2012).

In deciding a motion to dismiss for failure to state a claim, a court "accept[s] the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Henley v. Payne*, 945 F.3d 1320, 1326 (11th Cir. 2019). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[D]etailed factual allegations" are generally not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Generally, when analyzing a motion to dismiss for failure to state a claim, a court considers only the four corners of the complaint. *See Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023). However, a court may also consider judicially noticed facts. *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013). Additionally, Federal Rule of Civil Procedure 8 permits a plaintiff to include inconsistent and alternative claims in a

complaint. Fed. R. Civ. P. 8(d)(2)–(3).

The allegations of a pro se complaint are subject "to less stringent standards than formal pleadings drafted by lawyers." *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Courts therefore "give liberal construction" to pro se filings. *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007). Nonetheless, the court may not serve as de facto counsel for a pro se party or rewrite a deficient complaint to sustain a lawsuit. *See Campbell*, 760 F.3d at 1168–69.

## ANALYSIS

The court first considers Defendant's motion to strike Plaintiff's second amended complaint before turning to the motion to dismiss the amended complaint.

### A. Motion to Strike

A plaintiff may amend a complaint once as a matter of course no later than twenty-one days after it is served or the earlier of twenty-one days after service of an answer or a motion under Federal Rule of Civil Procedure 12(b), 12(e), or 12(f). Fed. R. Civ. P. 15(a)(1). "In all other cases," the plaintiff may amend the complaint "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

Plaintiff's second amended complaint was not filed in compliance with either of these rules. Plaintiff did not file her first amended complaint as a matter of course under Rule 15(a)(1) but did so after the court dismissed her initial complaint and granted leave to amend. (Dkts. 6, 8.) *See M.G. v. St. Lucie Cnty. Sch. Bd.*, 741 F.3d

1260, 1263 (11th Cir. 2014).  Even if the court presumes that Plaintiff could have filed a second amended complaint as a matter of course, *cf. Beaulieu v. Powell*, No. 22-13796, 2023 WL 3302874, at *5 (11th Cir. May 8, 2023), *cert. denied*, 144 S. Ct. 558 (2024), Plaintiff did not file the second amended complaint in the time required by the rule. The amended complaint was filed on May 23, 2024, (Dkt. 8), the motion to dismiss was filed on September 10, 2024, (Dkt. 20), and the second amended complaint was filed on January 30, 2025, (Dkt. 33)—more than twenty-one days later.  Accordingly, Plaintiff could amend only with the court's or Defendant's approval, which she did not seek.  *See Iriele v. Griffin*, 65 F.4th 1280, 1286 (11th Cir. 2023) ("If the requirements of Rule 15(a)(1) are not met, a party may amend its pleading only with consent from the opposing party or leave of court.").

Defendant's motion to strike is therefore granted.  *See Schebel v. Charlotte County*, 833 F. Supp. 889, 890 (M.D. Fla. 1993) (striking a pro se plaintiff's complaint for failure to comply with Rule 15(a)).  Thus, the amended complaint, (Dkt. 8), is the operative complaint.

### B.  Motion to Dismiss

Defendant asserts that Plaintiff has failed to state a claim against her in either her official or individual capacity for use of excessive force.  (Dkt. 20 at 3–7, 9–10.) Defendant contends that she is entitled to qualified immunity as to the individual capacity claims because Plaintiff has not shown that she violated Plaintiff's constitutional rights.  (*Id.* at 7–9.)  The court first discusses Plaintiff's official capacity claims before considering her individual capacity claims.

### 1.  Official Capacity Claims

A suit against parties in their official capacities is equivalent to a suit against the municipality for which they work.  *See Cooper v. Dillon*, 403 F.3d 1208, 1221 n.8 (11th Cir. 2005) (citing *McMillian v. Monroe County*, 520 U.S. 781, 785 n.2 (1997)).  "When suing local officials in their official capacities under [section] 1983, the plaintiff has the burden to show that a deprivation of constitutional rights occurred as a result of an official government policy or custom."  *Id.* at 1221 (footnote omitted).

As with Plaintiff's initial complaint, her amended complaint does not allege any facts establishing that the purported constitutional violations resulted from a policy, custom, pattern, or practice.  (*See* Dkt. 8; *see also* Dkt. 6.)  Consequently, Plaintiff's official capacity claims against Defendant are dismissed.  *See Castellano v. N. Broward Det. Facility*, No. 18-60797-CIV-UNGARO, 2018 U.S. Dist. LEXIS 114450, at *9–10 (S.D. Fla. July 9, 2018) (dismissing official capacity claims where the "plaintiff [did] not allege the existence of . . . a custom or policy, much less that it was the moving force behind the alleged deprivation").

### 2.  Individual Capacity Claims

Defendant argues that Plaintiff has not stated a claim for the use of excessive force, (Dkt. 20 at 3–7), and that Defendant is entitled to qualified immunity as to Plaintiff's individual capacity claims, (*id.* at 7–9).  The court disagrees.  Plaintiff has stated claims for deliberate indifference and excessive force, and Defendant is not entitled to qualified immunity as to either of these claims.

### a) Deliberate Indifference

Based on Plaintiff's allegations, she appears to raise a claim for deliberate indifference to unconstitutional conditions of confinement.  (*See* Dkt. 8 at 4–5.) Because Plaintiff was a pretrial detainee at the time of the alleged incident, her claims arise under the Fourteenth Amendment.  *See Taylor v. Adams*, 221 F.3d 1254, 1257 n.3 (11th Cir. 2000) (stating that a pretrial detainee's "Cruel and Unusual Punishment claims sound properly in the Fourteenth Amendment right to due process of law rather than in the Eighth Amendment"); *accord Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1115 (11th Cir. 2005) (stating that for deliberate indifference claims "the minimum standard allowed by the due process clause is the same as that allowed by the [E]ighth [A]mendment for convicted persons" (quotation omitted)); *see also Johnson*, 741 F. App'x at 699 n.5.  "A prison official violates the [Fourteenth] Amendment when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (emphasis and quotation omitted).  "The Constitution does not mandate comfortable prisons . . . ." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation omitted).  However, "it does not allow a prisoner to be exposed to an objectively unreasonable risk of serious damage to his future health."  *Brooks v. Warden*, 800 F.3d 1295, 1303 (11th Cir. 2015) (quotation omitted).

"[D]eliberate[ ]indifference claims come in different varieties," specifically

"inaction cases" that "challenge prison officials' failure to do something" and "action cases" that "target prison officials' affirmative misconduct." *Wade v. McDade*, 106 F.4th 1251, 1259–60 (11th Cir. 2024) (en banc) (quotation marks omitted) (providing hypotheticals of a guard who "fires his gun toward the ceiling, only to have the bullet ricochet . . . and kill another prisoner," a warden who "requires inmates to clean the prison yard in subzero temperatures, resulting in an otherwise-healthy prisoner's sickness and eventual death," and an official who "orders an inmate to clean . . . with a mixture of bleach and ammonia, [causing] permanent respiratory damage"); *see Taylor v. Riojas*, 592 U.S. 7, 7–10 (2020); *Hope v. Pelzer*, 536 U.S. 730, 738 (2002). In action-based deliberate indifference cases, "the reviewing court must assess the defendant's knowledge by reference to the risk created by [her] own conduct." *Wade*, 106 F.4th at 1260 (emphasis omitted).

To state a claim for deliberate indifference, a plaintiff must satisfy three elements: (1) "a substantial risk of serious harm," (2) "the defendant['s] deliberate indifference to that risk," and (3) "a causal connection between the defendant['s] conduct and the [Fourteenth] Amendment violation." *Brooks*, 800 F.3d at 1303; *see Epps v. Hein*, No. CV416-100, 2016 WL 3208950, at *7 (S.D. Ga. June 7, 2016). Whether a plaintiff was exposed to a substantial risk of serious harm—the first element—is an objective inquiry, while the defendant's deliberate indifference to that risk—the second element—poses a subjective question. *See Farmer*, 511 U.S. at 836– 37, 842, 846. For the second element, the plaintiff must demonstrate that the defendant (1) "had subjective knowledge of a risk of serious harm," (2) "disregarded

that risk," and (3) "engaged in conduct that amounts to subjective recklessness." *Stalley v. Cumbie*, 124 F.4th 1273, 1283 (11th Cir. 2024); *see Wade*, 106 F.4th at 1261–62. Deliberate indifference "requires nothing more than an act (or omission) of indifference to a serious risk that is voluntary, not accidental." *Farmer*, 511 U.S. at 840; *see id.* at 835 (holding that "deliberate indifference entails something more than mere negligence" but "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result").

Plaintiff's allegations state a claim of deliberate indifference. (*See* Dkt. 8 at 4–5.) When the court construes her pro se complaint liberally and in the light most favorable to her, Plaintiff alleges that she submitted herself to be handcuffed for Defendant to search her cell and that Defendant knowingly placed handcuffs on her that were covered with fecal matter. (*Id.*) Plaintiff claims that Defendant "went all the way up [Plaintiff's] forearm[,] forcefully dragging the handcuffs down [Plaintiff's] arms with fecal matter on them." (*Id.* at 5.) In relation to the first element, Plaintiff adequately asserts that Defendant's conduct not only created a substantial risk of serious harm but also did cause harm: specifically, a sexually transmitted disease. (*Id.*) Plaintiff also satisfies the third element by sufficiently alleging "a causal connection between the defendant['s] conduct and the [Fourteenth] Amendment violation." *See Brooks*, 800 F.3d at 1303–04 (holding that allegations that a plaintiff was "forced to defecate into his jumpsuit and sit in his own feces for two days" stated a claim of deliberate indifference).

As to the second element, Plaintiff pleads that Defendant was deliberately indifferent to the risk caused by the feces. (Dkt. 8 at 5.) Though this issue is subjective, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. "[T]he health risks of prolonged exposure to human excrement are obvious." *Brooks*, 800 F.3d at 1305; *accord Taylor*, 592 U.S. at 7–10 (explaining that exposure to bodily waste posed an obvious risk of serious harm); *Bilal v. Geo Care, LLC*, 981 F.3d 903, 909, 916 (11th Cir. 2020) (holding that refusing to provide a bathroom break and thus causing a prisoner to sit in feces for three hundred miles violated the Fourteenth Amendment). As a result, prisoners have "successfully stated [deliberate indifference] claims based on being placed in contact and close proximity with excrement." *Brooks*, 800 F.3d at 1304; *accord Hardeman v. Curran*, 933 F.3d 816, 821 (7th Cir. 2019) (noting that "continued exposure to human excrement" can violate the Constitution (collecting cases)). Moreover, Plaintiff is not alleging a latent preexisting risk caused by other inmates; rather, Defendant's action caused the fecal matter to cover Plaintiff's arms. *See Wade*, 106 F.4th at 1259. Thus, Plaintiff satisfies the subjective component of deliberate indifference because exposure to human excrement creates an obvious and substantial risk of serious harm. *See Taylor*, 592 U.S. at 7–10; *Bilal*, 981 F.3d at 909, 916; *Brooks*, 800 F.3d at 1305. In other words, Plaintiff plausibly pleads that Defendant knew of a risk to Plaintiff's health and disregarded the risk through subjectively reckless conduct. *Id.*

Despite the obvious risks associated with feces, Plaintiff alleges that Defendant rubbed excrement on Plaintiff.  (Dkt. 8 at 5.)  Accordingly, Plaintiff alleges a plausible claim of deliberate indifference.  *See Hope*, 536 U.S. at 745; *Brooks*, 800 F.3d at 1305.

### b) Excessive Force

To claim excessive force as a pretrial detainee, Plaintiff must show that "the force purposely or knowingly used against [her] was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015).  Several factors are relevant in this inquiry, including (1) "the relationship between the need for the use of force and the amount of force used," (2) "the extent of the plaintiff's injury," (3) the defendant's efforts "to temper or to limit the amount of force," (4) "the severity of the security problem at issue," (5) "the threat reasonably perceived" by the defendant, and (6) "whether the plaintiff was actively resisting." *Id.* at 397.  "These considerations should be made without regard for the officer's subjective intent or motivation." *Ireland v. Prummell*, 53 F.4th 1274, 1297 (11th Cir. 2022).

Defendant asserts that *Sconiers v. Lockhart*, 946 F.3d 1256 (11th Cir. 2020), provides the applicable standard.  (Dkt. 20 at 4–5.)  Because Plaintiff was a pretrial detainee when the alleged misconduct occurred, the court applies *Kingsley* to the excessive force claims.[5]  Had Plaintiff been convicted at the time of the incident, the

---

[5] The Eleventh Circuit has held that "*Kingsley* does not undermine . . . deliberate indifference precedents." *Johnson*, 741 F. App'x at 699 n.5; *accord Dang ex rel. Dang v. Sheriff, Seminole Cnty.*, 871 F.3d 1272, 1279 n.2 (11th Cir. 2017) (explaining that because "*Kingsley* involved an excessive[ ]force claim, not . . . deliberate indifference," it is not "squarely on point with and does not actually abrogate or directly conflict with" prior precedents on deliberate indifference claims (quotation omitted)).

court would apply *Hudson v. McMillian*, 503 U.S. 1, 5 (1992), and *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).  *See Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002).  These are two different tests as "[t]he language of the two [relevant constitutional c]lauses differs, . . . the nature of the claims often differs[, a]nd, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less maliciously and sadistically."  *Kingsley*, 576 U.S. at 400 (quotation omitted).  Nonetheless, because the post-conviction standard identified by Defendant is a higher standard than that of *Kingsley*, cases decided under the post-conviction standard can still be informative.

Based on the amended complaint, Plaintiff was fully compliant and there is no indication Plaintiff was resisting or presented a security problem or threat.  (*See* Dkt. 8.)  *See Thomas v. Bryant*, 614 F.3d 1288, 1312 (11th Cir. 2010) (holding that "spraying inmates with chemical agents . . . when [they were] fully secured" and "not presenting a threat of immediate harm" violates the Eighth Amendment); *Council v. Sutton*, 366 F. App'x 31, 36–37 (11th Cir. 2010) (explaining that allegations that "tasers and beanbag rounds were used against [a jail inmate] after he was compliant and subdued" plead a Fourteenth Amendment violation).  Given these allegations, the force used by Defendant—applying feces on a detainee submitting herself for handcuffing—was neither proportionate nor necessary.  *See Ort v. White*, 813 F.2d 318, 322 (11th Cir. 1987) (noting that while prison officials are afforded due deference in maintaining the safety and order of penal institutions, "this deference 'does not insulate from review actions taken . . . for no legitimate purpose'" (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986))).  Further, there seemingly was "[n]o reasonably perceived penological

need . . . for the application of such force." *Hogan v. Fischer*, 738 F.3d 509, 516 (2d Cir. 2013) (citation omitted); *DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (holding that a prison official's indiscriminate spraying of cells with pepper spray served no penological purpose under the higher post-conviction standard); *Escobar v. Mora*, 496 F. App'x 806, 812 (10th Cir. 2012) (holding that "an absence of a legitimate penological interest lends support to an asserted constitutional violation" where "[t]he only purpose of spitting into [a] plaintiff's meals would be to taunt and degrade him").

As for the injury suffered, in addition to being smeared with feces, Plaintiff alleges that she contracted a disease from the excrement and that the disease produced lesions on her genitals. (Dkt. 8 at 5.) Defendant disputes Plaintiff's allegation that the feces caused Plaintiff's injuries. (*See* Dkt. 20 at 6–7.) At this stage of the proceedings, however, the court must accept the veracity of Plaintiff's allegations, and Plaintiff has plausibly alleged that she was harmed by Defendant's conduct. (*See* Dkt. 8 at 5.) *See Iqbal*, 556 U.S. at 678. Thus, the amended complaint contains sufficient allegations showing that the force used—rubbing feces on Plaintiff's arms—was objectively unreasonable and thus excessive. *See Seweid v. County of Nassau*, No. 21CV03712JMAAYS, 2024 WL 693981, at *9 (E.D.N.Y. Feb. 20, 2024) (determining that urinating on an inmate constituted excessive force under the higher post-conviction standard).

Defendant states that "Plaintiff provides no context for these allegations whatsoever, nor does she explain where the fecal matter originated or how it allegedly came to be on the handcuffs." (Dkt. 20 at 6.) Even so, under the higher post-

conviction standard, Defendant's conduct in rubbing the feces on Plaintiff's arms was humiliating, degrading, and "undoubtedly repugnant to the conscience of mankind," thus violating the Fourteenth Amendment. *Hogan*, 738 F.3d at 516 (quotation omitted); *accord Hudson*, 503 U.S. at 9–10 ("The Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." (quotation omitted)); *Hill v. Crum*, 727 F.3d 312, 323–24 (4th Cir. 2013) ("The types of actions that have been classified as 'repugnant to the conscience of mankind' are torture, humiliation, or degradation."); *Acevedo v. Warner,* No. 7:03CV00526, 2005 U.S. Dist. LEXIS 32332, at *11–12, 15–*16 (W.D. Va. Mar. 29, 2005) (concluding that conduct including smearing feces and urine on a prisoner's face was repugnant to the conscience of mankind).

Defendant primarily analyzes the excessive force claim in terms of handcuffing. (Dkt. 20 at 6 (citing *Sebastian v. Ortiz*, 918 F.3d 1301, 1305, 1312 (11th Cir. 2019) (holding that an officer was not entitled to qualified immunity when he "intentionally applie[d] unnecessarily tight handcuffs to an arrestee . . . neither resisting arrest nor attempting to flee"), and *Gold v. City of Miami*, 121 F.3d 1442, 1445–47 (11th Cir. 1997) (determining that officers were entitled to qualified immunity when only "minimal force was used to apply . . . handcuffs"))). It is undoubtedly true, but not relevant here, that "only the most exceptional circumstances will permit an excessive force claim on the basis of handcuffing alone." *Sebastian*, 918 F.3d at 1312. Plaintiff's excessive force

claim is not based on handcuffing alone; rather, it is based on Defendant's alleged use of handcuffs to cover Plaintiff in feces. (*See* Dkt. 8 at 4–5.) Accordingly, Defendant's caselaw on handcuffing is inapplicable. Defendant does not analyze Plaintiff's claim that Defendant's use of excrement constituted excessive force. (*See* Dkt. 20.) The alleged use of feces—even under Defendant's cited standard—is "not a good faith effort to maintain or restore discipline, but an attempt to maliciously and sadistically cause harm." *Hogan*, 738 F.3d at 515–16 (alteration adopted and quotation omitted) (holding that "spraying an inmate with a mixture of feces, vinegar, and machine oil . . . is unequivocally contrary to 'contemporary standards of decency'" under the higher post-conviction standard (quoting *Whitley*, 475 U.S. at 327)); *Moody v. Shoults,* No. 5:15-cv-00325-MTT-CHW, 2016 WL 8465004, at *3 , *5 (M.D. Ga. July 28, 2016) (determining that the plaintiff's allegations that the defendant "intentionally poured a mixture of urine and feces . . . into [the p]laintiff's cell" stated a claim for excessive force under the higher post-conviction standard), *report and recommendation adopted in relevant part sub nom. Moody v. Shoultes,* 2017 WL 626367, at *2 (M.D. Ga. Feb. 15, 2017). Accordingly, Plaintiff has adequately stated a claim for excessive force.

### c) Qualified Immunity

Defendant submits that "Plaintiff has not alleged sufficient facts to meet her pleading burden so as to overcome qualified immunity." (Dkt. 20 at 9.) Qualified immunity protects government officials "from suit in their individual capacities for

discretionary actions performed in the course of their duties." *Carter v. Butts County*, 821 F.3d 1310, 1318 (11th Cir. 2016); *accord Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) ("Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted."). "To invoke the defense of qualified immunity, a government official must have been acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Spencer v. Benison*, 5 F.4th 1222, 1230 (11th Cir. 2021) (quotation omitted). "After a government official establishes that [s]he was acting within the scope of h[er] discretionary authority, the burden shifts to the plaintiff to show that the official's conduct (1) violated federal law (2) that was clearly established at the relevant time." *Id.*; *see Carruth v. Bentley*, 942 F.3d 1047, 1054 (11th Cir. 2019). As for the second prong, "'[c]learly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (cleaned up).

A plaintiff can satisfy the clearly established prong in three ways: (1) with "case[]law with indistinguishable facts," (2) with "a broad statement of principle within the Constitution, statute, or case[]law," or (3) with alleged "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case[]law." *Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021) (quotation omitted). The clearly established analysis generally limits courts to "binding decisions of the Supreme Court of the United States, . . . the Eleventh Circuit, and the highest court of

the pertinent state, here the Florida Supreme Court." *Wate v. Kubler*, 839 F.3d 1012, 1018 (11th Cir. 2016). However, in deciding whether the law was clearly established, courts can consider "persuasive out-of-circuit authority to determine whether a violation was of 'obvious clarity.'" *Gilmore v. Ga. Dep't of Corr.*, 144 F.4th 1246, 1259 (11th Cir. 2025) (en banc). Obvious clarity—the third way described above—ensures that qualified immunity does not permit flagrantly unconstitutional conduct to go unremedied and unpunished. *See United States v. Lanier*, 520 U.S. 259, 271 (1997) ("[T]he easiest cases do[ no]t even arise. There has never been a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages or criminal liability." (quotation omitted and alterations adopted)).

Obvious clarity is reserved for "extreme circumstances" presenting "particularly egregious facts" that would have put any reasonable officer on notice that his actions "offended the Constitution." *Taylor*, 592 U.S. 7 (reversing the grant of qualified immunity to officers who violated the Eighth Amendment by leaving an inmate for six days in one cell covered in feces and in another that was cold and had only a clogged drain in the floor to dispose of bodily wastes); *accord Hope*, 536 U.S. at 734–35, 745 (holding that prison guards were not entitled to qualified immunity with respect to a claim that they handcuffed a prisoner to a post in the hot sun for hours with little access to water and bathroom breaks—"obvious[ly] cruel[ ]" acts that "should have provided" the guards with "some notice" that their behavior violated the Eighth Amendment).

According to the amended complaint, Defendant was acting in the scope of her discretionary authority when the incident occurred—she was a prison guard performing a routine search of Plaintiff's cell when she handcuffed Plaintiff. (*See* Dkt. 8 at 5.) *See Balbin v. Johnson*, No. 22-11182, 2025 WL 883064, at *2 (11th Cir. Mar. 19, 2025) ("[I]t is within a corrections officer's discretionary authority to conduct searches of inmate living areas to maintain prison security."). Accordingly, the burden falls to Plaintiff to demonstrate that Defendant violated clearly established law. *See Spencer*, 5 F.4th at 1230; *Carruth*, 942 F.3d at 1054. In her briefing, Plaintiff advances an obvious clarity argument and cites *Brooks*, 800 F.3d at 1307. (Dkt. 39 at 4.)

The court has already determined that Plaintiff adequately alleges deliberate indifference and excessive force, thereby satisfying the first prong of the qualified immunity inquiry. Only the clearly established analysis remains. The court considers deliberate indifference[6] and excessive force in turn.

### i) Deliberate Indifference

The Eleventh Circuit has "long recognized a well established . . . right not to be confined in conditions lacking basic sanitation." *Brooks*, 800 F.3d at 1303 (alteration adopted and quotation omitted). "Indeed, every sister circuit (except the Federal

---

[6] The Eleventh Circuit has previously held that "[a] finding of deliberate indifference necessarily precludes a finding of qualified immunity; prison officials who deliberately ignore the serious medical needs of inmates cannot claim that it was not apparent to a reasonable person that such actions violated the law." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1186 (11th Cir. 1994) (quotation omitted). That said, the Eleventh Circuit subsequently stated that this pronouncement was dicta and demurred on whether a finding of deliberate indifference necessarily satisfies the clearly established prong. *Lancaster v. Monroe County*, 116 F.3d 1419, 1426 n.7 (11th Cir. 1997). For this reason, the court will conduct a full analysis. *See Goebert*, 510 F.3d at 1326–31 (conducting separate analyses for deliberate indifference and qualified immunity).

Circuit) has recognized that the deprivation of basic sanitary conditions can" violate the Eighth and Fourteenth Amendments. *Id.* at 1304 (collecting cases). Additionally, Fourteenth "Amendment violations can arise from . . . proximity to human waste," and there is clearly established law "sufficient to put [officers] on notice." *Id.* at 1306; *accord DeSpain*, 264 F.3d at 974–75, 979 (stating that "[i]n viewing the great weight of cases . . . condemning on constitutional grounds an inmate's exposure to human waste, a reasonable prison official would have known at the time that it was improper to expose prisoners to such unsanitary, offensive conditions," and  collecting cases with similar holdings from various circuits dating back to 1972). Even if there is not an identical case to the one at hand, "[e]xact factual identity with a previously decided case is not required." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011); *see Hope*, 536 U.S. at 741.

Obvious clarity applies to satisfy the second prong of the qualified immunity inquiry. There are enough cases about exposure to feces to provide "fair and clear warning" that Defendant's alleged actions would violate the Fourteenth Amendment. *Hope*, 536 U.S. at 746 (quoting *Lanier*, 520 U.S. at 271); *see Taylor*, 592 U.S. at 7–10; *Bilal*, 981 F.3d at 909, 916; *Brooks*, 800 F.3d at 1305; *Hogan*, 738 F.3d at 515–16. It bears repeating that Defendant allegedly rubbed feces along the length of Plaintiff's arms on purpose. (Dkt. 8 at 4–5.) Plaintiff plausibly pleads that Defendant covered Plaintiff in excrement. (*Id.*) This conduct is "beyond any reasonable pale." *DeMarcus v. Univ. of S. Ala.*, 133 F.4th 1305, 1319 (11th Cir. 2025). Defendant's purported misconduct thus constitutes one of those rare times that the Constitution itself put

Defendant on fair notice of the unconstitutionality of her actions.  *See Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002) ("[T]he words of the pertinent . . . federal constitutional provision in some cases will be specific enough to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity, even in the total absence of case[]law." (emphasis omitted)).

No reasonable correctional officer could have concluded that it was constitutionally permissible to use handcuffs to cover an inmate with feces.  *See Hope*, 536 U.S. at 745 (holding that "[t]he obvious cruelty inherent" in putting inmates in certain wantonly "degrading and dangerous" situations provides officers "with some notice that their alleged conduct violate[s]" the Eighth Amendment).  There is no indication that the fecal contact was "compelled by necessity or exigency."  *Taylor*, 592 U.S. at 9.  Courts have reached the same conclusion in similar cases prior to the alleged conduct at issue.  *See Brooks*, 800 F.3d at 1307 (holding that obvious clarity applied in a deliberate indifference case about exposure to feces); *Moody*, 2016 WL 8465004, at *4 ("Any reasonable officer should know 'that [pouring feces and urine into a prisoner's cell] was at war with the command of the Eighth Amendment.'" (quoting *Brooks*, 800 F.3d at 1307)).  "[A] reasonable official should not have needed" caselaw to know that forcing feces on a prisoner violated the Fourteenth Amendment.  *See Brooks*, 800 F.3d at 1307.  When the court takes Plaintiff's allegations as true, Defendant's actions satisfy the obvious clarity standard.  *See Taylor*, 592 U.S. at 8–9; *Hope*, 536 U.S. at 741.

Defendant maintains that the obvious clarity standard applies only "where the

plaintiffs were subject to prolonged and intentional exposure of feces," (Dkt. 40 at 2 (emphasis omitted)), largely in reliance on an unpublished Eleventh Circuit opinion, *Hamlet v. Martin Corectional Institution*, No. 21-11937, 2022 WL 16827438, at *4 (11th Cir. Nov. 9, 2022), (*see* Dkt. 40 at 4–6). Defendant oversimplifies the analysis. In *Hamlet*, the Eleventh Circuit held that "exposure to feces and urine in [a] shower" did not violate clearly established law because it lasted only thirty to forty minutes, and the contact was "intermittent rather than consistent." *Hamlet*, 2022 WL 16827438, at *4. At the same time, the Eleventh Circuit noted that the "feces [were not] continuously pressed against the plaintiff's body" and the plaintiff had access to both "means to mitigate the severity of [the] exposure," and the "possibility of avoiding contact with feces," which are "important considerations in assessing the objective extremity of the conditions." *Id.*

*Hamlet* is thus distinguishable. First, the amended complaint does not clarify how long Plaintiff's exposure lasted, so even if Defendant is correct that prolonged exposure is dispositive, there are no facts presently indicating that the contact was brief, nor does Defendant identify any such facts, other than conclusively asserting that the exposure was brief. (*See* Dkt. 40 at 2.) Second, if intentionality is a relevant factor, Plaintiff sufficiently alleges that "[Defendant] went all the way up [Plaintiff's] forearm[,] forcefully dragging the handcuffs down [Plaintiff's] arms with fecal matter on them." (Dkt. 8 at 5.) *See Lewis v. Fla. Dep't of Corr.*, 522 F. App'x 590, 592 (11th Cir. 2013) ("[C]onsistently serving a prisoner food that has been *intentionally contaminated with . . . bodily fluids . . .* would constitute a violation of the Eighth

- 22 -

Amendment." (emphasis added)). To the extent that Defendant seeks to dispute this allegation, the court must take the facts alleged in the complaint as true and "constru[e] them in the light most favorable to the plaintiff." *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1291 (11th Cir. 2007). Third, Defendant ignores other relevant factors identified by the Eleventh Circuit, including continuous contact, means to mitigate, and the possibility of avoiding contact, none of which favor Defendant. (*See* Dkt. 40.) Finally, *Hamlet* was decided at the summary judgment phase, after the factual record was more fully developed. *See* 2022 WL 16827438, at *1.

Ultimately, at the motion to dismiss stage, Plaintiff adequately alleges that Defendant acted in a manner that "[a]ny reasonable officer should have known . . . was at war with the command of the [Fourteenth] Amendment." *Brooks*, 800 F.3d at 1307. As a result, Defendant is not entitled to qualified immunity on the deliberate indifference claim.

### ii) Excessive Force

In the supplemental briefing, Defendant acknowledges that "Plaintiff has asserted a claim of excessive use of force," but Defendant limits her arguments to "cases concerning conditions of confinement claims related to sanitation and/or feces." (Dkt. 40 at 9.) In any event, Defendant is not entitled to qualified immunity as to the excessive force claim as "a defense of qualified immunity is not available in cases alleging excessive force." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) ("[T]he use of force maliciously and sadistically to cause harm is clearly

established to be a violation of the Constitution . . . . There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation." (quotation omitted)); *see United States v. Hill*, 99 F.4th 1289 (11th Cir. 2024), *cert. denied,* No. 24-677, 2025 WL 1426661 (U.S. May 19, 2025).

Still, it was clearly established that Defendant's conduct violated the Fourteenth Amendment as "the alleged force was gratuitous and malicious, such that no reasonable officer in [Defendant's] shoes could have believed the force used was constitutionally permissible," *Foy v. Sheriff of Jefferson Cnty.*, No. 23-11302, 2025 WL 671959, at *5 (11th Cir. Mar. 3, 2025), especially because Plaintiff alleges she was complying and in the process of being handcuffed when the fecal matter was applied. *See Piazza v. Jefferson County*, 923 F.3d 947, 950, 954 (11th Cir. 2019) (holding that repeated taser use on a motionless and unresponsive pretrial detainee violated the detainee's constitutional right to be free from excessive force); *Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008) (stating that "[w]hen jailers continue to use substantial force against a [pretrial detainee] who has clearly stopped resisting—whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated—that use of force is excessive"); *Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002) (reversing the grant of qualified immunity for slamming an arrestee's head against the trunk of her car after she had been "arrested, handcuffed, and completely secured").

Further, "it is no answer to say that . . . none of [the] cases [discussed]

- 24 -

concerned the use of [feces] specifically." *Piazza*, 923 F.3d at 956; *accord Hope*, 536 U.S. at 741 ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances."). In fact, "case[]law need not confront the type of force at issue if it clearly establishes that no force would be objectively reasonable under the circumstances . . . And here, precedent clearly established that [an officer] could not use force against a compliant, nonresistant detainee." *Hill*, 99 F.4th at 1303 (emphasis omitted); *accord Terebesi v. Torreso*, 764 F.3d 217, 237 (2d Cir. 2014) ("An officer is not entitled to qualified immunity on the grounds that the law is not clearly established every time a novel method is used to inflict injury." (quotation omitted)).

Plaintiff's allegations show no legitimate law enforcement or penological reason for Defendant to rub feces on Plaintiff. (*See* Dkt. 8 at 4–5.) In any event, the "general constitutional rule already identified in the decisional law"—that any added force used against a compliant, nonresistant detainee is excessive—applies here "with obvious clarity to the specific conduct in question." *See Taylor*, 592 U.S. at 8–9 (quoting *Hope*, 536 U.S. at 741); *see also Hill*, 99 F.4th at 1303. It is also unlikely that any reasonable officer would think that rubbing feces on a pretrial detainee is lawful. *See Seweid*, 2024 WL 693981, at *9 (holding that qualified immunity did not apply when it was obviously clear that there was no legitimate law enforcement or penological reason to urinate on an inmate). Defendant is therefore not entitled to qualified immunity on

the excessive force claim.

## CONCLUSION

Accordingly:

1. Defendant's motion to dismiss (Dkt. 20) is **GRANTED in part** and **DENIED in part**.  Plaintiff's official capacity claims are **dismissed**.  The motion is otherwise **denied**.

2. Defendant's motion to strike the second amended complaint (Dkt. 34) is **GRANTED**.  The Clerk is **DIRECTED** to strike Plaintiff's second amended complaint (Dkt. 33).

3. On or before October 10, 2025, Defendant shall answer the amended complaint (Dkt. 8).

**ORDERED** in Orlando, Florida, on September 18, 2025.


_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE


Copies furnished to:
Counsel of Record
Unrepresented Party